ARTURO M. CISNEROS, #120494
NATHAN F. SMITH, #264635
MALCOLM ♦ CISNEROS, A Law Corporation
2112 Business Center Drive
Irvine, California 92612
Phone: (949) 252-9400
Fax: (949) 252-1032
Email: nathan@mclaw.org

*Attorneys for HLS of Nevada d.b.a. Nevada West Financial*

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION

| | |
|---|---|
| In re: | Case No. 6:19-bk-19414-SC |
| JACOB DORSTEN, | Chapter 7 |
| Debtor. | Adversary No. _____ |
| HLS of Nevada, LLC d.b.a. Nevada West Financial, a Nevada limited liability company, | **COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(6)** |
| Plaintiff, | |
| v. | |
| JACOB DORSTEN, an individual, | |
| Defendant. | |

Plaintiff HLS of Nevada, LLC d.b.a. Nevada West Financial ("Plaintiff") hereby alleges as follows:

## STATEMENT OF JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 151, 157(b)(2)(I) and 1334 and 11 U.S.C. § 523.

Complaint                                          1

2.     This is an action to determine the dischargeability of a debt under 11 U.S.C. §§ 523(a)(6) and is brought as an adversary proceeding pursuant to Federal Rules of Bankruptcy Procedure 4007, and 7001 *et seq*.

3.     Venue in this Court is proper pursuant to 28 U.S.C. § 1409 because this adversary proceeding arises in and relates to a case under title 11 of the United States Code that is pending in this District: *In re Jacob Dorsten*, United States Bankruptcy Court for the Central District of California, Riverside Division case number 6:19-bk-19414-SC (the "Bankruptcy Case").

4.     This is a "core" proceeding as defined by 28 U.S.C. § 157(b)(2)(I).

**PARTIES TO THE ACTION**

5.     On October 25, 2019 (the "Petition Date"), Jacob Dorsten ("Debtor") commenced the Bankruptcy Case by filing a voluntary petition for relief under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code").

6.     Plaintiff is a creditor of the Debtor by reason of a debt incurred under a Motor Vehicle Retail Installment Sales Contract and Purchase Money Security Agreement entered into by the Debtor in April, 2016 ("Contract").

**GENERAL ALLEGATIONS**

7.     On or about April 15, 2016, Debtor, for valuable consideration, made, executed, and delivered to USA Auto Inc. the Contract for the purchase of a 2014 Hyundai Accent, Vehicle Identification Number: KMHCT5AEEU165801 ("Vehicle").  A true and correct copy of the Contract is attached hereto as Exhibit "A."

8.     Pursuant to the Contract, Debtor agreed to pay for the Vehicle by making a down payment of $1,500 and monthly payments of $373.89 for sixty-six (66) months from May 30, 2016 to October 30, 2021, with payments totaling $26,176.74.

9.     The Contract was assigned to Plaintiff, as reflected at the bottom of page 1 of the Contract.  Plaintiff's duly perfected first-priority lien against the Vehicle is evidenced by a State of Arizona – PDP Electronic Title ("Title").  A true and correct copy of the Title to the Vehicle is attached hereto as Exhibit "B."

10.     Plaintiff is informed and believes and thereon alleges that Debtor conspired with David

Complaint                                                    2

1   Dorsten d.b.a. Rum Runner Auto Transport ("Rum Runner") to conduct a lien sale of the Vehicle under

2   California Civil Code § 3072 for the purpose of transferring title of the Vehicle and depriving Plaintiff

3   of the Vehicle, which serves as collateral for the Contract and against which Plaintiff holds a duly

4   perfected first-priority lien.

5         11.    Plaintiff is informed and believes and thereon alleges that David Dorsten is the Debtor's

6   father and owner of Rum Runner Auto Transport.

7         12.    Plaintiff is informed and believes and thereon alleges that Rum Runner and its agent,

8   Denco Lien Sales, Inc. ("Denco") purportedly conducted a lien sale of the Vehicle and transferred title

9   of the Vehicle to Auto Sport and Service, an individual or entity doing business in San Diego County,

10  California and whose principal place of business is 409 S. Coast Hwy., Oceanside, California 92054

11  ("Auto Sport").

12        13.    Plaintiff had no knowledge of and did not consent to the purported sale of the Vehicle by

13  Rum Runner or Denco to Auto Sport.

14        14.    Plaintiff is informed and believes and thereon alleges that Auto Sport then sold the

15  Vehicle for $14,999.

16        15.    On or about May 16, 2018, Plaintiff filed a complaint against Debtor, David Dorsten

17  d.b.a. Rum Runner, Denco, and Auto Sport in the Superior Court of the State of Arizona for the County

18  of Maricopa as case number CV2018-007491.

19        16.    On November 26, 2019, at the § 341(a) meeting of creditors in the Bankruptcy Case, the

20  Debtor testified under penalty of perjury that the Vehicle was damaged in an alleged accident that

21  occurred in Arizona and that the Debtor had it towed to California by Rum Runner, which subsequently

22  sold the Property because the Debtor failed to pay the "tow yard lien."

23        17.    Plaintiff is informed and believes and thereon alleges that the Debtor's testimony at the §

24  341(a) meeting of creditors that the Vehicle was damaged in an accident is false.

25        18.    In the Debtor's Statement of Financial Affairs, the Debtor states, under penalty of

26  perjury, that the:

27        "[Vehicle"] was damaged in an accident, the car was towed and when the debtor couldn't
          pay the tow yard lien sold the vehicle.  There wasn't any insurance coverage to fix it
28        because it was the Debtor's fault.  The car was totaled.  The car was a Hyundai Accent."

Complaint                                                    3

1  A true and correct copy of the Debtor's Statement of Financial Affairs is attached hereto as Exhibit "C."

2      19.    Plaintiff is informed and believes and thereon alleges that the Debtor's statement in his

3  Statement of Financial Affairs that the: "[Vehicle"] was damaged in an accident, the car was towed and

4  when the debtor couldn't pay the tow yard lien sold the vehicle.  There wasn't any insurance coverage to

5  fix it because it was the Debtor's fault.  The car was totaled" is false.

6      20.    Debtor defaulted under the terms of the Contract by failing and refusing to make the

7  monthly payments due and owing under the Contract.  The Contract is currently due for the July 30,

8  2016 payment and all payments that have come due thereafter, which also remain unpaid.  Based upon

9  the Debtor's default under the Contract, Plaintiff elected to declare the total indebtedness due under the

10  Contract to be immediately due and payable.  As of January 22, 2020, $32,264.04 is due and owing

11  under the Contract.

12      21.    Debtor's actions in conspiring with his father and Rum Runner to transfer title of the

13  Property were willful, malicious, and committed with an intent to defraud Plaintiff by depriving it of its

14  first-priority lien against the Vehicle and the Vehicle, which serves as collateral for the amounts due and

15  owing under the Contract.

16      22.    Plaintiff has demanded payment from Debtor and the return of the Vehicle, pursuant to

17  the terms of the Contract.  Nevertheless, Debtor failed and refused to pay the amounts due to Plaintiff

18  under the Contract.  Debtor has also refused to return the Vehicle despite Plaintiff's lawful demand to

19  return the Vehicle.

20      23.    Pursuant to the Contract, Debtor agreed to pay reasonable attorney fees incurred in

21  collecting any amount due under the Contract.  Plaintiff has retained Malcolm ♦ Cisneros, A Law

22  Corporation for the purposes of instituting and prosecuting this action and is entitled to recover its

23  reasonable attorney fees and costs incurred herein.

24      24.    Plaintiff is informed and believes and thereon alleges that Debtor has engaged in

25  fraudulent, improper, and unlawful actions to defraud Plaintiff by depriving it of the its first-priority lien

26  against the Vehicle and the Vehicle, which served as collateral for the amounts due and owing to

27  Plaintiff under the Contract.  Such actions constitute a deliberate, willful, and malicious scheme to

28  defraud Plaintiff by driving it of its first-priority lien against the Vehicle and the Vehicle, which served

Complaint                        4

1    as collateral for the amounts due and owing to Plaintiff under the Contract.

2        25.    As a result of Debtor's actions, Plaintiff has suffered monetary damages according to

3    proof and recoverable in this Court because such debt is nondischargeable under 11 U.S.C. § 523(a)(6).

4    **FIRST CLAIM FOR RELIEF**

5    **(Determination of Nondischargeability of Debt Under 11 U.S.C. § 523(a)(6))**

6        26.    Plaintiff re-alleges and incorporates by this reference, each and every allegation set forth

7    in paragraphs 1 through 26, inclusive, as though fully set forth herein.

8        27.    Debtor's actions in conspiring with his father and Rum Runner to transfer title to the

9    Vehicle and thereby deprive Plaintiff of the Vehicle, against which it holds a duly perfected first-priority

10   lien constitutes a "willful and malicious injury by the Debtor to [Plaintiff]" and to "the property of

11   [Plaintiff]" under 11 U.S.C. § 523(a)(6).

12   **PRAYER FOR RELIEF**

13       **WHEREFORE**, Plaintiff prays for a judgment on this Complaint, as it may be amended from

14   time to time, as follows:

15       1.    For judgment against Debtor in an amount according to proof for the amounts due and

16           owing under the Contract, and pre- and post-judgment interest thereon;

17       2.    For a declaration that such judgment is nondischargeable in bankruptcy pursuant to 11

18           U.S.C. § 523(a)(6);

19       3.    For attorney fees and costs of suit incurred herein; and

20       4.    For such other and further relief as the Court deems just and proper.

21   DATED: January 23, 2020           Respectfully Submitted,

22                            Malcolm ♦ Cisneros, A Law Corporation

23                            By:  */s/ Nathan F. Smith*

24                                NATHAN F. SMITH

25                                *Attorneys for HLS of Nevada, LLC d.b.a. Nevada West Financial*

26

27

28

**EXHIBIT A**

| STOCK NO. | 165801 | MOTOR VEHICLE RETAIL INSTALLMENT SALES CONTRACT AND PURCHASE MONEY SECURITY AGREEMENT |
|---|---|---|

**Buyer(s)/Debtor(s):** JACOB DORSTEN

**Address:** 3149 E MCKELLIPS MESA AZ 95213

**Seller/Creditor:** USA Auto Inc
525 W. Main Street

**Address:** Mesa, AZ 85201

This is an agreement for the installment purchase by you of the Vehicle described below. As used in this Contract, the words "you" and "your" mean the Buyer or Buyers who sign below. The words "we", "us", "our" and "Seller" refer to the Seller whose name and address appear above or to anyone to whom this Contract is assigned (referred to as the "Assignee"). If the Assignee notifies you that it has purchased this Contract, you agree to make all of your payments to the Assignee. This Contract may be cancelled by Seller if it is unable to assign the Contract to any one of the financial institutions with whom Seller regularly does business on terms acceptable to Seller. **BY SIGNING BELOW, YOU ALSO AGREE TO ALL OF THE TERMS ON BOTH SIDES OF THIS CONTRACT. PLEASE READ THE BACK CAREFULLY.**
The Vehicle which you are purchasing is a:

| NEW OR USED | YEAR MODEL | MAKE TRADE NAME | NO. CYL. | BODY TYPE | MODEL # OR SERIES | VEHICLE I.D.# |
|---|---|---|---|---|---|---|
| Used | 2014 | HYUNDAI | 4 | GS 4dr Hatchback 6M | ACCENT | KMHCT5AE2EU165801 |

You intend to use the Vehicle primarily for: ☐ personal, family, or household purposes ("personal use") ☐ commercial, business, agricultural, or other non-personal uses ("commercial use").

| | | Your payment schedule will be: |
|---|---|---|
| **ANNUAL PERCENTAGE RATE** | THE COST OF YOUR CREDIT AS A YEARLY RATE. 24.00 % | Number of Payments / Amount of Payments / When Payments are Due: |
| **FINANCE CHARGE** | THE DOLLAR AMOUNT THE CREDIT WILL COST YOU. $ 11,176.74 e | 65 — $373.89 ; One Final Payment $373.89 — Monthly, Beginning 05/30/2016 ; 10/30/2016 |

**Insurance:** CREDIT LIFE INSURANCE AND CREDIT DISABILITY INSURANCE ARE **NOT REQUIRED** TO OBTAIN CREDIT, AND WILL NOT BE PROVIDED UNLESS YOU SIGN AND AGREE TO PAY THE ADDITIONAL COST.

| Type | Term | Premium | Signature |
|---|---|---|---|
| Credit Life Insurance | N/A mos. | $ N/A | I want credit life insurance only _____ |
| Disability Insurance | N/A mos. | $ N/A | I want disability insurance only _____ |
| Credit Life and Disability | N/A mos. | $ N/A | I want credit life and disability insurance _____ |
| Joint Credit Life Insurance | N/A mos. | $ N/A | We want joint credit life insurance _____ |
| Joint Credit Life and Single Disability Insurance | N/A mos. | $ N/A | We want joint credit life and single disability insurance _____ |

| Amount Financed | The amount of credit provided to you or on your behalf. $ 13,500.00 | |
| Total of Payments | The amount you will have paid after you have made all payments as scheduled. $ 24,676.74 e | |
| Total Sale Price | The total cost of your purchase on credit including your down payment of $ 1,500.00 $ 26,176.74 e | |

**e means an estimate**

**Security:** You are giving a security interest in the Vehicle being purchased.
**Late Charge:** If the Vehicle is purchased for personal use, and a payment is not paid in full within 10 days after it is due, you will pay a late charge not to exceed 5% of the unpaid balance of the installment.
**Prepayment:** If you pay off early, you will not have to pay a penalty.
See the other portions of this Contract for additional information about non-payment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

## ITEMIZATION OF AMOUNT FINANCED

1. Cash Price (incl. accessories) $ 12,800.00 + Sales Tax $ 1,030.40 +
   Net Trade-In Deficiency (item 5 if negative) $ _____ to _____ = Total Cash Price . . . . . . . $ 13,830.40 (1)
2. Other charges included in this sale:
   ** (a) Vehicle Service Contract (Term) 0 mo. 0 mi. . . . . . . . . . . . . . . $ 0.00
   (b) Dealer Documentary Fee . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 347.90
   ** (c) Other (describe) _____ to _____ $ N/A
   ** (d) Other (describe) _____ to _____ $ N/A
   ** (e) Other (describe) _____ to _____ $ N/A
   ** (f) Other (describe) _____ to _____ $ N/A
   Total . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 347.90 (2)
3. Payments made on your behalf to Public Officials for Official Fees. . . . . . . . . . . $ 223.70 (3)
4. Cash Sale Price (sum of items 1, 2 and 3) . . . . . . . . . . . . . . . . . . . . . $ 14,401.00 (4)
5. Trade-in _____ $ 0.00 - $ 0.00 = $ 0.00 (5)
   Yr. Make & Model / Gross Allowance / Payoff / Net Trade-In (Deficiency)
6. Total Down Payment includes:
   (a) Net Trade-In (item 5) (if negative, insert $0). . . . . . . . . . . . . $ 0.00
   (b) Cash Down Payment (Includes manufacturer's rebate of $ 0.00 assigned to Seller) $ 1,500.00
   Total Down Payment (a + b) . . . . . . . . . . . . . . . . . . . . . . . . $ 1,500.00 (6)
7. Unpaid balance of Cash Sale Price (item 4 less item 6) . . . . . . . . . . . . . . . $ 12,901.00 (7)
8. Payments made to others on your behalf:
   ** (a) Amounts paid to Insurance Companies for Insurance Premiums:
   (1) Credit Insurance Premiums $ N/A + (2) Property Insurance Premiums $ N/A
   Total . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ N/A (8a)
   (b) Amounts paid to others:
   ** (1) To: _____ for: GAP $ 599.00 (8b)
   ** (2) To: _____ for: Bank Fee $ N/A (8c)
   ** (3) To: _____ for: _____ $ N/A (8d)
   Total Amount Paid to Others (Sum of items 8(a) through 8(d)) . . . . . . . $ 599.00 (8)
   **Seller may be retaining a portion of this amount.
9. Amount Financed - Amount of credit you will get (item 7 plus item 8) . . . . . . . . . $ 13,500.00 (9)
10. If the "Amount Financed" exceeds $ _____ or if the Vehicle is purchased primarily for commercial use, the "Amount Financed" is also the "Final Cash Price Balance" and the "Total of Payments" is also the "Time Balance."
11. **Property Insurance:** You promise to keep the Vehicle insured for its full value against loss or damage with loss payable endorsement in our favor during the time any amount is unpaid under this Contract. YOU MAY OBTAIN YOUR REQUIRED INSURANCE FROM ANY COMPANY ACCEPTABLE TO US. If you purchase your insurance through Seller, the costs and items of coverage are as follows:

| | TERM | PREMIUM |
|---|---|---|
| Collision (actual cash value of loss less $ N/A deductible) and Comprehensive including fire and theft (cash value of loss less $ N/A deductible) | 0 months | $ N/A |
| Other (describe) _____ | 0 months | $ N/A |

If you buy insurance through your own agent, the cost is not included in this Contract. Please give us the name and telephone number of the agent you choose:

Agent's Name _____ Telephone Number _____
Agent's Address _____ City _____ State _____

**Promise to Pay:** By signing below, you promise to pay us the Amount Financed, together with finance charges calculated thereon at the Annual Percentage Rate. You agree to make your payments to us set forth in the Payment Schedule shown above. Your final payment may change, depending upon your payment habits. We will apply each payment first to accrued finance charges and late charges and then to reduce your unpaid balance. This means your finance charge will be less when you pay early and more if you pay late. Any necessary adjustments in your total finance charge will be reflected in your final payment. If a payment is not paid in full within 10 days after it is due, you will also pay a late charge. If the Vehicle is purchased for commercial use, the late charge will be 5% of the unpaid balance of the installment; if the Vehicle is purchased for personal use, the late charge will not exceed 5% of the unpaid balance of the installment.

**Security Interest:** To protect us if you do not pay as promised, or if you break some other promise of this Contract, you give us a purchase money security interest in the Vehicle, all accessions thereto, and in any proceeds of the Vehicle. If the Vehicle is purchased for commercial use, this security interest also covers all equipment, accessories, and parts (other than accessions) added to the Vehicle. If the Vehicle is purchased for personal use, this security interest also covers equipment, accessories, and parts (other than accessions) added to the Vehicle within 10 days of the date of this Contract. You also give us a security interest in the proceeds of any physical damage insurance policy on the Vehicle; all insurance, maintenance, service, or other contracts we finance for you; and all proceeds from insurance, maintenance, service, or other contracts we finance for you, including any refunds of premiums or charges from the contracts. This security interest does not cover any other debts you owe us, and this debt is not covered by any other security interest held by us. **NOTICE: BY GIVING US A SECURITY INTEREST IN THE VEHICLE DESCRIBED ABOVE, YOU WAIVE ALL RIGHTS PROVIDED BY LAW TO CLAIM THE VEHICLE EXEMPT FROM LEGAL PROCESS.**

**LIMITATIONS/EXCLUSIONS OF PRODUCT WARRANTIES**
**(a) For "new" vehicles: (1) If the Vehicle is purchased for personal use, Seller makes no implied warranty of merchantability or of fitness for any particular purpose unless Seller also gives you a written warranty, on its own behalf, with respect to the Vehicle, or, at the time of the sale or within 90 days thereafter, Seller enters into a service contract, on its own behalf, with you which applies to the Vehicle. In that event, any implied warranties arising from the sale of the Vehicle shall be limited to the duration of a Seller's written warranty or service contract; (2) If the Vehicle is purchased for commercial use, Seller makes no implied warranty of merchantability or of fitness for any particular purpose. The Vehicle is sold to you AS IS, except for any express warranties made by Seller, on its own behalf, or by the manufacturer of the Vehicle or of any component parts; (3) In all cases, Seller shall not be liable for any consequential damages arising from any breach of any warranty, express or implied.**
**(b) For "used" vehicles:**
**(1) Used Car Implied Warranty of Merchantability.**

> The Seller hereby warrants that the vehicle will be fit for the ordinary purposes for which the vehicle is used for 15 days or 500 miles after delivery, whichever is earlier, except with regard to defects disclosed on the first page of this agreement. You (the Purchaser) will have to pay up to $25.00 for each of the first two repairs if the warranty is violated.

**(2) Waiver of Used Car Implied Warranty of Merchantability:** ATTENTION PURCHASER: To circumstances unusual to Seller's business, the used motor vehicle which is the subject of this contract has the particular defects, if any, described below.
**ATTENTION PURCHASER:** Sign here only if the dealer told you that this vehicle has the following problem(s) and that you agree to buy the vehicle on those terms:
**ATENCION COMPRADOR:** Firme aqui solamente si el vendedor le dijo que el vehículo tiene el siguiente problema(s) y que usted conviene de compra el vehículo bajo estos términos:

1. _____ Buyer/Comprador _____ Date _____
2. _____ Buyer/Comprador _____ Date _____
3. _____

This instrument is payable to Republic Bank as collateral for borrowing of HLS of Nevada, LLC dba Nevada West Financial

**(3) The vehicle is sold "AS IS -- NOT EXPRESSLY WARRANTED OR GUARANTEED"** unless Seller gives you a separate written instrument showing the terms of any warranty or service contract given by Seller on its own behalf. If the Vehicle is purchased for personal use, Seller makes no implied warranty of fitness for any particular purpose, and the implied warranty of merchantability is limited to 15 days or 500 miles after delivery, whichever is earlier, as set forth above, unless Seller also gives you a written warranty, on its own behalf, with respect to the Vehicle, or, at the time of the sale or within 90 days thereafter, Seller enters into a service contract, on its own behalf, with you which applies to the Vehicle. In that event, any implied warranties arising from the sale of the Vehicle shall be limited to the duration of Seller's written warranty or service contract. If the Vehicle is purchased for commercial use, Seller makes no implied warranty of fitness for any particular purpose, and the implied warranty of merchantability is limited to 15 days or 500 miles after delivery, whichever is earlier. In all cases, Seller shall not be liable for any consequential damages arising from any breach of any warranty, express or implied, except for a breach of the implied warranty of merchantability.

**NOTICE TO BUYER: 1. Do not sign this Contract before you read it or if it contains any blank spaces. 2. You are entitled to an exact copy of the Contract you sign.**

Annual Percentage Rate (APR) for the installment sale of an automobile may be negotiated with the dealership; and the dealership may receive some portion of the finance charge or receive other compensation for providing the financing.

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT, UNLESS DESCRIBED IN ITEM 11 AND AN APPROPRIATE PREMIUM CHARGE IS SHOWN IN ITEM 8(A) ABOVE.**

SELLER IS REGULATED AND COMPLAINTS CONCERNING THIS CONTRACT MAY BE ADDRESSED TO:
ARIZONA DEPARTMENT OF FINANCIAL INSTITUTIONS
2910 N. 44th STREET, SUITE 310
PHOENIX, ARIZONA 85018
TELEPHONE: (602) 771-2800

Buyer(s) Acknowledge(s) receipt of a fully completed copy of this Contract.
*BUYER X _____
*BUYER _____

Dated this _____ day of Apr , 20 16 By _____ Its AGENT

*OTHER OWNERS: If a person shown on the certificate of title as an owner of the vehicle does not want to be separately liable to pay this debt, please sign below to give us a security interest in the Vehicle, its proceeds, and physical damage insurance policy and any refunds of insurance premiums.

SIGNATURE _____ DATE 04/15/2016    SIGNATURE _____ DATE 04/15/2016

THE TRANSACTION WHICH IS THE SUBJECT OF THIS CONTRACT ☐ IS OR ☐ IS NOT SUBJECT TO A FEE RECEIVED BY A BROKER FROM THE SELLING MOTOR VEHICLE DEALER. IF APPLICABLE, THE NAME OF THE BROKER IS: _____

## ASSIGNMENT

Seller hereby assigns this Contract to the below designated Assignee under the terms and conditions of a Dealer Agreement (☐ Recourse ☐ Non-Recourse) previously entered into between Seller and Assignee, and in any event in accordance with the terms, conditions and warranties of the Seller's Assignment and Warranty on the reverse side hereto.

USA Auto Inc
SELLER NEV AT WEST #45-3 DATED 04/19/2016 BY 2087   AUTHORIZED SIGNER _____ TITLE AGENT
Assignee: _____ Branch _____

ORIGINAL    ALL RIGHTS RESERVED

Form No. 12 ©2005 a-d-s, INC. (Rev. 6/10)

EXHIBIT A
PAGE 6

## ADDITIONAL TERMS, AGREEMENTS AND CONDITIONS

1. **BUYERS GUIDE FOR USED VEHICLES:** THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

LA INFORMACION QUE APARECE EN LA VENTANILLA DE ESTE VEHICULO FORMA PARTE DE ESTE CONTRATO. LA INFORMACION CONTENIDA EN EL FORMULARIO DE LA VENTANILLA ANULA CUALQUIER PREVISION QUE ESTABLEZCA LO CONTRARIO Y QUE APAREZCA EN EL CONTRATO DE VENTA.

2. (a) If the Vehicle is purchased primarily for personal use: NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

(b) If the Vehicle is purchased for commercial use, you will not assert any claim or defense against an Assignee of this Contract except of a type which may be asserted against a holder in due course of a negotiable instrument.

3. **ADDITIONAL COVENANTS OF BUYER:** You will (a) store the Vehicle at your address on the face hereof; (b) permit us to examine the Vehicle at any time; (c) maintain the Vehicle in good condition and repair; (d) not permit the Vehicle to be permanently removed from the State of Arizona without our prior written consent; (e) not permit the Vehicle to be attached or other process to be levied thereon; (f) not create or permit to be created any lien or encumbrance or adverse claim of any character whatsoever, whether for storage, repairs, or otherwise, justified or unjustified; (g) not attempt to sell, rent, lease, assign, or otherwise transfer your right, title, or interest in the Vehicle or this Contract without our written permission; and (h) pay all taxes and assessments of every character levied or assessed against the Vehicle, this Contract and the indebtedness represented hereby. You authorize us, at our option and without any obligation to do so, to discharge any and all taxes, liens, security interests or other encumbrances at any time levied or placed on the Vehicle. You hereby agree to reimburse us on demand for any expense incurred by us pursuant to this authorization, plus interest on all sums so expended until paid at a rate equal to the Annual Percentage Rate.

Time is of the essence of this Contract. Our acceptance of partial payments shall not in any manner modify the terms of this Contract and such acceptance shall not be construed as a waiver of any subsequent defaults on your part nor shall it waive the "time is of the essence" provision. Any payment amount we receive in addition to or in excess of a regular scheduled payment may be applied first to accrued late charges and collection charges (if any) and then to finance charges due and to the unpaid balance outstanding. You may not assign this Contract except with our prior written consent. You agree that you will not use or permit the Vehicle to be used for any unlawful purpose, nor to be used for hire, nor will you allow any person to operate or use the Vehicle who is not allowed under the terms of the insurance policies herein required to so operate or use the Vehicle.

Any notice required to be given to you shall be deemed reasonable notification if mailed by ordinary mail, postage prepaid, to your mailing address given herein or to your most recent address as shown by a "Notice of Change of Address" on file with us whether or not actually received by you, or if given in any other manner which results in your actual receipt of such notice.

4. **INSURANCE:** You agree to: (a) keep the Vehicle insured at your own expense against loss by fire, theft, collision and such other risks as we shall designate; (b) such insurance shall cover our interest in the Vehicle and shall be in force so long as any part of the balance owed under this Contract remains unpaid; and (c) such insurance is to be placed with insurance companies reasonably acceptable to us and loss thereon is to be paid to you and us as each party's interest may appear. You hereby assign to us the proceeds of all such insurance to the extent of the unpaid balances hereunder and direct any insurer to make payments directly to us. You hereby request and authorize us, at our option and without obligation to do so, to place and pay for insurance on the Vehicle upon your failure, after having been requested to do so; to provide insurance satisfactory to us and to pay the premium either for such insurance or similar insurance protecting us only, adding same to the unpaid balance then owing or by an advance which constitutes additional indebtedness and is secured hereunder and is added to the remaining installments or is payable in additional installments, due on this Contract. The policies therefor shall be held by us until this Contract is fully performed. You agree to reimburse us on demand for any payment made or any expenses incurred by us pursuant to the foregoing authorization, together with interest thereon from disbursement until paid at a rate equal to the Annual Percentage Rate. In the event of a loss, you agree that we may collect the proceeds from such insurance and apply the proceeds towards replacement of the Vehicle or payment of your obligation under this Contract. If we retake possession of the Vehicle, the insurance policies thereon, financed under this Contract, shall become our sole property and you shall have no further interest therein. In the event of any default hereunder, we are authorized to cancel any insurance and credit any premium refund against said unpaid balances.

5. **ADDITIONAL CHARGES FOR DELINQUENT PAYMENTS:** If you fail to make timely payments under this Contract, and if such delinquency requires collection efforts by us, you agree to pay reasonable collection charges and costs incurred by us, which charges may include specific charges for collection calls and collection letters.

6. **PREPAYMENT:** You may prepay the principal balance in full or in part at any time without penalty, provided all finance charges and other charges accrued to the date of prepayment are paid.

7. **COMPUTATION OF FINANCE CHARGES:** Finance charges accrue on a daily basis. A day shall be counted as 1/360th of a year, unless the Assignee of this Contract uses a method of computation which counts a day as 1/365th or 1/366th of a year, in which event the method of computation used by the Assignee for retail installment transactions such as yours on the date of assignment of this Contract to such Assignee shall apply.

8. **EVENTS OF DEFAULT:** (a) Any one of the following shall constitute an Event of Default: (1) Your failure to pay when due any indebtedness secured hereby; (2) If any warranty, representation or statement made herein or furnished to us by you or on your behalf in connection with this Contract proves to have been false in any material respect when made or furnished; (3) The commencement of any bankruptcy, arrangement, reorganization, insolvency, receivership or similar proceedings by or against you or any guarantor or surety for you; (4) The occurrence of any adverse change in your financial condition deemed material by us, or if, in our judgment the Vehicle becomes unsatisfactory in character or value, or if we reasonably deem ourselves insecure; (5) If you default in performing any of your obligations, promises, covenants or agreements contained herein or in any other agreement, paper or document given by you to us. (b) Any one of the following shall constitute an Event of Default if, in our opinion, such occurrence by itself, or such occurrence together with surrounding circumstances, materially increases our risks with regard to repayment of the indebtedness due: (1) Your death or incompetence; (2) If the Vehicle is levied upon or seized upon under any levy, attachment, garnishment, writ or other legal process, or if any lien is attached thereto; (3) If the Vehicle is lost, stolen, or suffers substantial damage destruction; (4) If the Vehicle is sold, rented, assigned or otherwise transferred without our written permission.

9. **DEBTOR'S LIABILITY FOR FAILURE TO RETURN VEHICLE:** It is unlawful to fail to return a motor vehicle subject to a security interest within 30 days after receiving notice of default. In the event of default, a notice of default will be mailed to you at the address on this Contract. However, nothing in this paragraph imposes any contractual obligation upon us to give you notice of default. Our failure to do so will not be a breach of this Contract and will not limit or impair any of our rights or remedies in the event of your default, as provided below. It is your responsibility to keep the listed address current. Unlawful failure to return a motor vehicle subject to a security interest is a class 6 felony. Assuming you have no history of prior felony convictions, such crime is punishable by a term of imprisonment of up to 1 year, plus a fine of up to $150,000., and all applicable charges.

10. **RIGHTS AND REMEDIES:** Upon the happening of any of the foregoing Events of Default and at any time thereafter, we may, at our option, and without notice to you, declare all of your indebtedness to us to be immediately due and payable, and we shall have the rights, duties and remedies of a secured party, and you shall have the rights and duties of a debtor, under the Uniform Commercial Code as adopted in the State of Arizona, and without limitation thereto, we shall have the following specific rights: (a) To take immediate possession of the Vehicle without notice or resort to legal process and for such purpose to enter upon any premises on which the Vehicle or any part thereof may be situated and to remove the same therefrom or, at our option, to render the Vehicle unusable; (b) To make or have made any repairs deemed necessary or desirable, the cost of which shall be charged to you; (c) If we take possession of the Vehicle, you will have the right to redeem the Vehicle by paying the net amount you owe on this Contract. If you do not redeem the Vehicle, we will, after giving notice to you and any other party entitled thereto, dispose of the Vehicle in a commercially reasonable manner, which may include either a public sale or a private sale. It is agreed that 10 days' notice of any such sale shall be reasonable. The proceeds of the sale, less allowed expenses, will be used to pay the amount still owed on this Contract. Allowed expenses are those reasonable expenses incurred as a direct result of retaking the Vehicle, holding it, preparing it for sale and selling it. In addition, if we hire an attorney who is not our salaried employee to collect what you owe, you agree to pay reasonable attorney's fees and court costs. If the proceeds of the sale, less allowed expenses, are not sufficient to pay the net amount still owed on this Contract, then, to the extent permitted by law, we may recover the deficiency with interest at the Annual Percentage Rate from you or anyone who has succeeded to your obligation. If there is money left over (surplus), it will be paid to you or whoever else is legally entitled to it. If, during repossession of the Vehicle, we come into possession of any property which is not security for this Contract, we will hold it for you. If you do not claim the property within 30 days after we have repossessed the Vehicle, we may dispose of the property in any manner we may select. You agree that we will have no further liability to you for this property.

11. **GENERAL:** This Contract shall be governed by the laws of the State of Arizona. Any provisions found to be invalid shall not invalidate the remainder hereof. Waiver of any default shall not constitute waiver of any subsequent default. All words used herein shall be construed to be of such gender and number as the circumstances require and all references herein to you shall include all other persons primarily or secondarily liable hereunder. This Contract shall be binding upon the heirs, personal representatives, successors and assigns and shall inure to the benefit of our successors and assigns. This Contract, together with any other written agreements contemporaneously executed by you and us, constitutes the entire agreement between you and us and may not be altered or amended unless made in writing and duly executed by you and us.

12. **SELLER'S RIGHTS IN ABSENCE OF CREDIT APPROVAL:** (a) You agree to furnish us any documentation necessary to verify information contained in the credit application. (b) You acknowledge that it may take a few days for us to verify your credit and assign this Contract. In consideration of our agreeing to deliver the Vehicle, you agree that if we are unable to assign this Contract to any one of the financial institutions with whom we regularly do business pursuant to terms of assignment acceptable to us, we may cancel this Contract. (c) In the event we cancel this Contract, we shall give you notice of the cancellation. Upon receipt of such notice, you shall immediately return the Vehicle to us in the same condition as when sold, reasonable wear and tear excepted, and this Contract shall then be deemed cancelled. We agree, upon cancellation of this Contract, to restore to you all consideration we received in connection with this Contract, including any trade-in vehicle. (d) In the event the Vehicle is not immediately returned to us upon notice of our cancellation of this Contract, you agree to pay and shall be liable to us for all expenses incurred by us in obtaining possession of the Vehicle, including attorney's fees, and we shall have the right to repossess the Vehicle with free right of entry wherever the Vehicle may be found. (e) While the Vehicle is in your possession, all terms of this Contract, including those relating to use of the Vehicle and insurance for the Vehicle, shall be in full force and all risk of loss or damage to the Vehicle shall be assumed by you, you shall pay all reasonable repair costs related to any damage sustained by the Vehicle while in your possession or control of and until the Vehicle is returned to us.

## SELLER'S ASSIGNMENT AND WARRANTY

For value received, Seller hereby sells, assigns and transfers to Assignee, all rights, title and interest in and to this Contract, the Vehicle and equipment therein described and all monies due and to become due hereunder. SUCH ASSIGNMENT SHALL BE PURSUANT TO THE REPRESENTATIONS, WARRANTIES AND OTHER PROVISIONS OF THE EXISTING DEALER AGREEMENT WITH ASSIGNEE. In the event there is no executed dealer agreement with Assignee, Seller warrants, to the best of its knowledge, that (i) the signature of the Buyer(s) herein are genuine, (ii) Seller holds title to the Vehicle, (iii) the cash down payment shown has been tendered to Seller, (iv) the Vehicle is free from any liens and/or encumbrances except the lien relating to the security interest created by this Contract, (v) the Vehicle has been delivered into the possession of the Buyer(s), (vi) Buyer(s) was of legal age to execute this Contract on the date hereof, (vii) the Vehicle has not been designated as salvaged, (viii) if this transaction is subject to regulation by any state or federal law or regulation, the transaction was consummated in compliance with such law(s) and any regulations promulgated pursuant thereto, (ix) that before offering to sell this Contract to Assignee, any period, where Buyer(s) had the right to rescind such transaction, had expired and such Buyer(s) had not rescinded the transaction, (x) that this Contract and the debt evidenced thereby is not, and will not be, subject to any claims, disputes, complaints, offsets, counterclaims or defenses of any kind during the time the said debt remains unpaid and (xi) Seller will take all action necessary to perfect the first lien purchase and security interest in Seller or its Assignee.

Seller hereby agrees to repurchase this Contract upon the occurrence of any such breach of warranty or false representation immediately, upon demand by Assignee, for a cash amount equal to the net unpaid balance of the Contract and, upon receipt of such funds, Assignee shall assign its security interest and any other rights to Seller. Seller further hereby agrees to indemnify and hold Assignee harmless from all loss, claims, damages, costs, expenses and attorney's fees incurred or sustained by Assignee resulting from or arising out of such obligations under this Contract determined to be due to any meritorious claim or defense Buyer(s) may now or in the future have against Seller relating to the transaction herein described. If the Assignee's and/or Seller's right and duties hereunder are referred to an attorney for interpretation or enforcement, the prevailing party shall be entitled to receive and collect from the losing party all court costs incurred plus reasonable attorney's fees.

Seller waives all demand and notices of default and consents that, without notice to the Seller, Assignee may extend the time of payments or compound or release by operation of law or otherwise any rights against Buyer(s) or any other obligor. Assignee shall not be bound to take any steps necessary to preserve any rights in this Contract or any accompanying agreements or documents against prior parties, which Seller hereby agrees to do.

IT IS EXPRESSLY UNDERSTOOD AND AGREED that any method of assignment herein provided shall not be deemed to relieve Seller of and from any liability for the breach of warranties, representations or agreements contained herein or in this Contract.

## GUARANTY

Each of the undersigned ("Guarantor"), jointly and severally, guarantees payment of all amounts owing under this Contract and the payment upon demand of the entire amount owing on this Contract in the event of default in payment by Buyer(s) named herein. Guarantor waives notice of performance, demand for performance, notice of nonperformance, protest, notice of protest, notice of dishonor, notice of acceptance of this Guaranty, of any extensions in time of payment, of sale of any of the collateral and of all other notices to which the undersigned would be otherwise entitled by law and agrees to pay all amounts owing hereunder upon demand, without requiring any action or proceeding against Buyer(s), and specifically waives any right to require action against Buyer(s) as provided in ARIZ. REV. STAT. § 12-1641, et seq. Guarantor agrees to deliver to Seller or, after assignment, to Assignee, timely financial statements and any other information relating to the Guarantor's financial condition as may be reasonably requested. GUARANTOR HEREBY ACKNOWLEDGES RECEIPT FROM SELLER, PRIOR TO SIGNING BELOW, OF A SEPARATE "NOTICE TO COSIGNER."

Date _____    Guarantor _____

Date _____    Guarantor _____

MARITAL COMMUNITY JOINDER. The undersigned spouse of Guarantor joins in the execution of this Guaranty for the purpose of binding the marital community of Guarantor and the undersigned, in accordance with ARIZ. REV. STAT. § 25-214 or other applicable law. UNDERSIGNED SPOUSE OF GUARANTOR ACKNOWLEDGES RECEIPT FROM SELLER, PRIOR TO SIGNING BELOW, OF A SEPARATE "NOTICE TO COSIGNER."

Date _____    Spouse of Guarantor _____

EXHIBIT A
PAGE 7

**EXHIBIT B**

## PDP Electronic Title

### STATE OF ARIZONA

| | | | |
|---|---|---|---|
| Title #: | BJ91016146050 | Title type: | |
| Issue date: | 2016/05/25 | Lic/Tag/Control #: | |

| | | | |
|---|---|---|---|
| VIN: | KMHCT5AE2EU165801 | | |
| Vehicle info: | 2014 HYUN | | |
| Odometer reading: | 000021865 | Odometer reading date: | |

Owner: JACOB DORSTEN

Co-owner:

Owner address: 3149 E MCKELLIPS RD

MESA, AZ 852133132

Lienholder: NEVADA WEST FINANICAL
PO BOX 94703

LAS VEGAS, NV 89193-4703

Title valid date:

Close

EXHIBIT B
PAGE 8

**EXHIBIT C**

| Fill in this information to identify your case: |
| --- |

Debtor 1      **Jacob Dorsten**
_____
First Name            Middle Name            Last Name

Debtor 2
(Spouse if, filing)    First Name            Middle Name            Last Name
_____

United States Bankruptcy Court for the:    CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION
_____

Case number
(if known)    _____

☐ Check if this is an amended filing

# Official Form 107

## Statement of Financial Affairs for Individuals Filing for Bankruptcy                4/19

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information.  If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.**

| Part 1: | Give Details About Your Marital Status and Where You Lived Before |
| --- | --- |

**1.   What is your current marital status?**

☐  Married

■  Not married

**2.   During the last 3 years, have you lived anywhere other than where you live now?**

■  No

☐  Yes. List all of the places you lived in the last 3 years. Do not include where you live now.

| Debtor 1 Prior Address: | Dates Debtor 1 lived there | Debtor 2 Prior Address: | Dates Debtor 2 lived there |
| --- | --- | --- | --- |

**3.   Within the last 8 years, did you ever live with a spouse or legal equivalent in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington and Wisconsin.)

■  No

☐  Yes. Make sure you fill out *Schedule H: Your Codebtors* (Official Form 106H).

| Part 2 | Explain the Sources of Your Income |
| --- | --- |

**4.   Did you have any income from employment or from operating a business during this year or the two previous calendar years?**
Fill in the total amount of income you received from all jobs and all businesses, including part-time activities.
If you are filing a joint case and you have income that you receive together, list it only once under Debtor 1.

☐  No

■  Yes. Fill in the details.

|  | **Debtor 1** | | **Debtor 2** | |
| --- | --- | --- | --- | --- |
|  | **Sources of income** Check all that apply. | **Gross income** (before deductions and exclusions) | **Sources of income** Check all that apply. | **Gross income** (before deductions and exclusions) |
| **From January 1 of current year until the date you filed for bankruptcy:** | ☐ Wages, commissions, bonuses, tips | **$24,000.00** | ☐ Wages, commissions, bonuses, tips |  |
|  | ■ Operating a business |  | ☐ Operating a business |  |

Software Copyright (c) 2019 CINGroup - www.cincompass.com

EXHIBIT C
PAGE 9

| Debtor 1 | **Dorsten, Jacob** | | Case number *(if known)* | |
|---|---|---|---|---|

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | **Sources of income**<br>Check all that apply. | **Gross income**<br>(before deductions and exclusions) | **Sources of income**<br>Check all that apply. | **Gross income**<br>(before deductions and exclusions) |
| **For last calendar year:**<br>(January 1 to December 31, 2018 ) | ☐ Wages, commissions, bonuses, tips<br><br>■ Operating a business | $24,000.00 | ☐ Wages, commissions, bonuses, tips<br><br>☐ Operating a business | |
| **For the calendar year before that:**<br>(January 1 to December 31, 2017 ) | ☐ Wages, commissions, bonuses, tips<br><br>■ Operating a business | $30,000.00 | ☐ Wages, commissions, bonuses, tips<br><br>☐ Operating a business | |

5. **Did you receive any other income during this year or the two previous calendar years?**
   Include income regardless of whether that income is taxable. Examples of *other income* are alimony; child support; Social Security, unemployment, and other public benefit payments; pensions; rental income; interest; dividends; money collected from lawsuits; royalties; and gambling and lottery winnings. If you are filing a joint case and you have income that you received together, list it only once under Debtor 1.

   List each source and the gross income from each source separately. Do not include income that you listed in line 4.

   ■ No
   ☐ Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | **Sources of income**<br>Describe below. | **Gross income from each source**<br>(before deductions and exclusions) | **Sources of income**<br>Describe below. | **Gross income**<br>(before deductions and exclusions) |

---

**Part 3:    List Certain Payments You Made Before You Filed for Bankruptcy**

6. **Are either Debtor 1's or Debtor 2's debts primarily consumer debts?**
   ☐ No.   **Neither Debtor 1 nor Debtor 2 has primarily consumer debts.** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

   During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $6,825* or more?
   ☐ No.   Go to line 7.
   ☐ Yes   List below each creditor to whom you paid a total of $6,825* or more in one or more payments and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.
   * Subject to adjustment on 4/01/22 and every 3 years after that for cases filed on or after the date of adjustment.

   ■ Yes.   **Debtor 1 or Debtor 2 or both have primarily consumer debts.**
   During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $600 or more?

   ■ No.   Go to line 7.
   ☐ Yes   List below each creditor to whom you paid a total of $600 or more and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

| Creditor's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Was this payment for ... |
|---|---|---|---|---|

7. **Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider?**
   *Insiders* include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations of which you are an officer, director, person in control, or owner of 20% or more of their voting securities; and any managing agent, including one for a business you operate as a sole proprietor. 11 U.S.C. § 101. Include payments for domestic support obligations, such as child support and alimony.

   ■ No
   ☐ Yes. List all payments to an insider.

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment |
|---|---|---|---|---|

Software Copyright (c) 2019 CINGroup - www.cincompass.com

EXHIBIT C
PAGE 10

| Debtor 1 | **Dorsten, Jacob** | Case number *(if known)* | |
|---|---|---|---|

8. **Within 1 year before you filed for bankruptcy, did you make any payments or transfer any property on account of a debt that benefited an insider?**
Include payments on debts guaranteed or cosigned by an insider.

   ■ No
   ☐ Yes. List all payments to an insider

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment<br>Include creditor's name |
|---|---|---|---|---|

---

**Part 4:    Identify Legal Actions, Repossessions, and Foreclosures**

9. **Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?**
List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody modifications, and contract disputes.

   ☐ No
   ■ Yes. Fill in the details.

| Case title<br>Case number | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|
| **Dorsten v. State Fund, Armando Delgado**<br>**MCC1800543** | **Personal Injury to Debtor's Person on the job** | **Riverside Superior Court**<br>**4050 Main St**<br>**Riverside, CA 92501-3702** | ☐ Pending<br>☐ On appeal<br>■ Concluded |
| **HLS of Nevada LLC dba Nevada West Financial v. Dorsten**<br>**CV 2018-007491** | **Financing Agency for the vehicle that was lien sold by Rum Runner Auto Transport.** | **Maricopa AZ Superior Court** | ■ Pending<br>☐ On appeal<br>☐ Concluded |

10. **Within 1 year before you filed for bankruptcy, was any of your property repossessed, foreclosed, garnished, attached, seized, or levied?**
Check all that apply and fill in the details below.

   ☐ No. Go to line 11.
   ■ Yes. Fill in the information below.

| Creditor Name and Address | Describe the Property<br><br>Explain what happened | Date | Value of the property |
|---|---|---|---|
| **Rum Runner Auto Transport**<br>**28039 Scott Rd Ste D**<br>**Murrieta, CA 92563-7430** | **The debtor's car was damaged in an accident, the car was towed and when the debtor couldn't pay, the tow yard lien sold the vehicle. There wasn't any insurance coverage to fix it because it was the Debtor's fault. The car was totaled. The car was a Huyndai Accent**<br><br>☐ Property was repossessed.<br>■ Property was foreclosed.<br>☐ Property was garnished.<br>☐ Property was attached, seized or levied. | **End of 2017** | **$300.00** |
| **Red Mountain Funding**<br>**955 E Main St**<br>**Mesa, AZ 85203-8819** | **Repossession of 2005 Scion xB**<br><br>■ Property was repossessed.<br>☐ Property was foreclosed.<br>☐ Property was garnished.<br>☐ Property was attached, seized or levied. | **April 2019** | **$500.00** |

11. **Within 90 days before you filed for bankruptcy, did any creditor, including a bank or financial institution, set off any amounts from your**

---

Official Form 107                    Statement of Financial Affairs for Individuals Filing for Bankruptcy                    page **3**

| Debtor 1 | **Dorsten, Jacob** | Case number (*if known*) | |
|---|---|---|---|

**accounts or refuse to make a payment because you owed a debt?**

■ No

☐ Yes. Fill in the details.

| Creditor Name and Address | Describe the action the creditor took | Date action was taken | Amount |
|---|---|---|---|

12. **Within 1 year before you filed for bankruptcy, was any of your property in the possession of an assignee for the benefit of creditors, a court-appointed receiver, a custodian, or another official?**

■ No

☐ Yes

---

**Part 5:    List Certain Gifts and Contributions**

13. **Within 2 years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person?**

■ No

☐ Yes. Fill in the details for each gift.

| Gifts with a total value of more than $600 per person<br><br>Person to Whom You Gave the Gift and Address: | Describe the gifts | Dates you gave the gifts | Value |
|---|---|---|---|

14. **Within 2 years before you filed for bankruptcy, did you give any gifts or contributions with a total value of more than $600 to any charity?**

■ No

☐ Yes. Fill in the details for each gift or contribution.

| Gifts or contributions to charities that total more than $600<br>Charity's Name<br>Address (Number, Street, City, State and ZIP Code) | Describe what you contributed | Dates you contributed | Value |
|---|---|---|---|

---

**Part 6:    List Certain Losses**

15. **Within 1 year before you filed for bankruptcy or since you filed for bankruptcy, did you lose anything because of theft, fire, other disaster, or gambling?**

☐ No

■ Yes.  Fill in the details.

| Describe the property you lost and how the loss occurred | Describe any insurance coverage for the loss<br><br>Include the amount that insurance has paid. List pending insurance claims on line 33 of *Schedule A/B: Property*. | Date of your loss | Value of property lost |
|---|---|---|---|
| **Car accident in the Huyndai Accident which was totaled and lien sold by the towing company** | **The debtor was at fault and did not have collision coverage** | **End of 2017 appx** | **$300.00** |
| **Physical Injury at work** | **The debtor was working and was hit by Armando Delgado and eventually was paid by Armando's insurance in April of 2019.** | **2016** | **$23,000.00** |

---

**Part 7:    List Certain Payments or Transfers**

16. **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone you consulted about seeking bankruptcy or preparing a bankruptcy petition?**
Include any attorneys, bankruptcy petition preparers, or credit counseling agencies for services required in your bankruptcy.

☐ No

■ Yes. Fill in the details.

| Person Who Was Paid<br>Address<br>Email or website address<br>Person Who Made the Payment, if Not You | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|

---

Official Form 107        Statement of Financial Affairs for Individuals Filing for Bankruptcy        page **4**

| Debtor 1 | **Dorsten, Jacob** | | Case number *(if known)* |
|---|---|---|---|

| Person Who Was Paid<br>Address<br>Email or website address<br>Person Who Made the Payment, if Not You | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|
| **The Law Office of David L Nelson**<br>**PO Box 1050**<br>**Murrieta, CA 92564-1050** | **Chapter 7 Flat Fee Attorney's Fees** | | **$1,000.00** |

17. **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone who promised to help you deal with your creditors or to make payments to your creditors?**
Do not include any payment or transfer that you listed on line 16.

■ No
☐ Yes. Fill in the details.

| Person Who Was Paid<br>Address | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|

18. **Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?**
Include both outright transfers and transfers made as security (such as the granting of a security interest or mortgage on your property). Do not include gifts and transfers that you have already listed on this statement.

■ No
☐ Yes. Fill in the details.

| Person Who Received Transfer<br>Address<br><br>Person's relationship to you | Description and value of property transferred | Describe any property or payments received or debts paid in exchange | Date transfer was made |
|---|---|---|---|

19. **Within 10 years before you filed for bankruptcy, did you transfer any property to a self-settled trust or similar device of which you are a beneficiary?** (These are often called *asset-protection devices.*)

■ No
☐ Yes. Fill in the details.

| Name of trust | Description and value of the property transferred | Date Transfer was made |
|---|---|---|

| **Part 8:** | **List of Certain Financial Accounts, Instruments, Safe Deposit Boxes, and Storage Units** |
|---|---|

20. **Within 1 year before you filed for bankruptcy, were any financial accounts or instruments held in your name, or for your benefit, closed, sold, moved, or transferred?**
Include checking, savings, money market, or other financial accounts; certificates of deposit; shares in banks, credit unions, brokerage houses, pension funds, cooperatives, associations, and other financial institutions.

■ **No**
☐ **Yes. Fill in the details.**

| Name of Financial Institution and Address (Number, Street, City, State and ZIP Code) | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|

21. **Do you now have, or did you have within 1 year before you filed for bankruptcy, any safe deposit box or other depository for securities, cash, or other valuables?**

■ **No**
☐ **Yes. Fill in the details.**

| Name of Financial Institution<br>Address (Number, Street, City, State and ZIP Code) | Who else had access to it?<br>Address (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
|---|---|---|---|

---

Official Form 107 | **Statement of Financial Affairs for Individuals Filing for Bankruptcy** | page **5**

Software Copyright (c) 2019 CINGroup - www.cincompass.com

EXHIBIT C
PAGE 13

| Debtor 1 | **Dorsten, Jacob** | Case number (*if known*) | |
|---|---|---|---|

**22.** **Have you stored property in a storage unit or place other than your home within 1 year before you filed for bankruptcy?**

■ **No**

☐ **Yes. Fill in the details.**

| Name of Storage Facility<br>Address (Number, Street, City, State and ZIP Code) | Who else has or had access to it?<br>Address (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
|---|---|---|---|

---

## Part 9:    Identify Property You Hold or Control for Someone Else

**23.** **Do you hold or control any property that someone else owns? Include any property you borrowed from, are storing for, or hold in trust for someone.**

■ **No**

☐ **Yes.  Fill in the details.**

| Owner's Name<br>Address (Number, Street, City, State and ZIP Code) | Where is the property?<br>(Number, Street, City, State and ZIP Code) | Describe the property | Value |
|---|---|---|---|

---

## Part 10:    Give Details About Environmental Information

**For the purpose of Part 10, the following definitions apply:**

■ *Environmental law* means any federal, state, or local statute or regulation concerning pollution, contamination, releases of hazardous or toxic substances, wastes, or material into the air, land, soil, surface water, groundwater, or other medium, including statutes or regulations controlling the cleanup of these substances, wastes, or material.

■ *Site* means any location, facility, or property as defined under any environmental law, whether you now own, operate, or utilize it or used to own, operate, or utilize it, including disposal sites.

■ *Hazardous material* means anything an environmental law defines as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, contaminant, or similar term.

**Report all notices, releases, and proceedings that you know about, regardless of when they occurred.**

**24.** **Has any governmental unit notified you that you may be liable or potentially liable under or in violation of an environmental law?**

■ **No**

☐ **Yes. Fill in the details.**

| Name of site<br>Address (Number, Street, City, State and ZIP Code) | Governmental unit<br>Address (Number, Street, City, State and ZIP Code) | Environmental law, if you know it | Date of notice |
|---|---|---|---|

**25.** **Have you notified any governmental unit of any release of hazardous material?**

■ **No**

☐ **Yes. Fill in the details.**

| Name of site<br>Address (Number, Street, City, State and ZIP Code) | Governmental unit<br>Address (Number, Street, City, State and ZIP Code) | Environmental law, if you know it | Date of notice |
|---|---|---|---|

**26.** **Have you been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

■ **No**

☐ **Yes. Fill in the details.**

| Case Title<br>Case Number | Court or agency<br>Name<br>Address (Number, Street, City, State and ZIP Code) | Nature of the case | Status of the case |
|---|---|---|---|

---

## Part 11:    Give Details About Your Business or Connections to Any Business

**27.** **Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?**

■ **A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time**

☐ **A member of a limited liability company (LLC) or limited liability partnership (LLP)**

---

Software Copyright (c) 2019 CINGroup - www.cincompass.com

EXHIBIT C
PAGE 14

Debtor 1    Dorsten, Jacob                                                    Case number (if known) _____

    ☐ A partner in a partnership

    ☐ An officer, director, or managing executive of a corporation

    ☐ An owner of at least 5% of the voting or equity securities of a corporation

☐  No. None of the above applies. Go to Part 12.

■  Yes. Check all that apply above and fill in the details below for each business.

| Business Name<br>Address<br>(Number, Street, City, State and ZIP Code) | Describe the nature of the business<br><br>Name of accountant or bookkeeper | Employer Identification number<br>Do not include Social Security number or ITIN.<br><br>Dates business existed |
|---|---|---|
| Make It Easy Auto Repair<br>28066 Lindell Rd<br>Lake Elsinore, CA 92532-7315 | mobile auto repair | EIN:<br><br>From-To  started 2017<br>continuing now |

28. **Within 2 years before you filed for bankruptcy, did you give a financial statement to anyone about your business? Include all financial institutions, creditors, or other parties.**

    ■  No

    ☐  Yes. Fill in the details below.

| Name<br>Address<br>(Number, Street, City, State and ZIP Code) | Date Issued |
|---|---|

## Part 12:  Sign Below

I have read the answers on this *Statement of Financial Affairs* and any attachments, and I declare under penalty of perjury that the answers are true and correct. I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

/s/ Jacob Dorsten
_____                          _____
Jacob Dorsten                                    Signature of Debtor 2
Signature of Debtor 1

Date  October 11, 2019                           Date  _____

Did you attach additional pages to *Your Statement of Financial Affairs for Individuals Filing for Bankruptcy* (Official Form 107)?
■ No
☐ Yes

Did you pay or agree to pay someone who is not an attorney to help you fill out bankruptcy forms?
■ No
☐ Yes. Name of Person_____. Attach the *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

EXHIBIT C
PAGE 15